### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

EUGENE DAVIDSON, III,

                Petitioner,                Case Number: 2:08-CV-13464

v.                                        HONORABLE GERALD E. ROSEN

SHERRY BURT,

                Respondent.

_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Eugene Davidson, III, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, who is presently on probation, challenges his convictions for assault with a dangerous weapon and possession of less than 25 grams of heroin. For the reasons set forth below, the Court denies the petition.

### I. Facts

Petitioner's conviction arises from a domestic dispute with his wife at their home in Eastpointe, Michigan.

Petitioner's wife, Kathy Davidson, testified that, on September 11, 2003, she, her husband, and her eleven-year old son, Eric were at home. Petitioner began looking for money that he could not find and asked Mrs. Davidson to leave. Petitioner was loud and angry, scaring Mrs. Davidson. Mrs. Davidson testified that Petitioner did not physically threaten her, but she called 911 because he needed to be calmed down. She did not speak

to anyone after dialing 911 because she was trying to defend herself verbally.  Petitioner tried to take the phone from her, but she did not let him.  She decided to leave the house with her son.  As she was leaving her home, police officers arrived at the scene.  She denied telling the police that Petitioner had a gun, and denied that Petitioner ever physically threatened her on that day.  She denied any knowledge of the substantial sum of money found in a dresser drawer in her and Petitioner's bedroom.

Police Officer Patrick Connor testified that he responded to a 911 call where a woman was heard screaming in the background.  When Officer Connor arrived, he found Petitioner's wife, Kathy Davidson, exiting their home with her son.  Mrs. Davidson told him that Petitioner had a gun and had threatened to kill her.  She informed Officer Connor that, while she had not actually seen a gun, her son thought he had seen a gun.  Officer Connor observed Petitioner begin to exit and then reenter the house.  Less than one minute after reentering the house, Petitioner exited again.  Officer Connor testified that, after it was confirmed that Petitioner was not carrying a weapon, Petitioner was placed in the back of another officer's squad car.

Officer Connor testified that he received permission from Mrs. Davidson to enter the home to search for the weapon.  Officer Connor saw some open drawers in a bedroom and, plainly exposed, was a very large sum of cash  in one of the drawers.  Officer Connor called for a supervisor, Corporal Vesco.  After Corporal Vesco arrived, it was agreed that the large sum of cash, which was determined to total over $167,000, should be taken along with Petitioner to the police station.  Petitioner suggested that the officers

2

place the money in a safe which he had just purchased and was located in a car parked in the driveway.  The officers agreed.  Officer Connor testified that, in retrieving the safe from the vehicle, he discovered a package which he suspected contained heroin.  He secured the package and returned it to the police station, where it tested positive for heroin.  The parties stipulated that the contents of the package containing heroin weighed .049 grams.

Eastpointe Police Officer Campbell also responded to the 911 call.  He testified that, after being informed by Officer Connor that there was a report of an assault with a gun, Petitioner told police that he did not have a gun, just a knife.

Petitioner testified in his own defense.  He testified that, on September 11, 2003, and the preceding evening, he and his wife argued about money, which he thought their fourteen-year-old son had stolen.  On his way home from work, Petitioner had purchased a safe.  He was going to put the large sum of cash from his home in the safe to prevent his older son from taking it.  He testified that the money came from his job and from gambling, not drugs.  He denied knowing anything about the heroin found in the vehicle.

## II.  Procedural History

Following a jury trial in Macomb County Circuit Court, Petitioner was convicted of assault with a dangerous weapon and possession of less than 25 grams of heroin.  On April 15, 2005, he was sentenced to 18 to 48 months' imprisonment for each conviction, to be served concurrently.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the

3

following claims:

I.    Where the record from the evidentiary hearing established that Mrs. Kathy Davidson merely acquiesced to the police officer's statement of intent to search the home, and did not consent to the search of the home; where the officers seized the currency in question unlawfully where it did not appear to be either evidence or contraband; and where [Petitioner] never consented to the search of the Toyota automobile; the trial court erred in denying [Petitioner's] motion to suppress both the currency and the items found in the car; and the decision of the trial court should be reversed.

II.    [Petitioner's] conviction for felonious assault was based on insufficient evidence, in violation of [Petitioner's] due process rights under U.S. Const., Ams. V, XIV and Mich. Const. 1963, Art 1, Sections 17, 20.

III.    Where the trial court permitted the prosecution to offer evidence that [Petitioner] had five prior narcotics convictions, in a case where the defense was that [Petitioner] did not know the single packet of heroin was in the car he used, where the use of the prior convictions was not logically relevant to the disputed element of knowledge or for any other purpose, where the use of the prior convictions constituted uncharged acts of prior misconduct pursuant to MRE 404(b), and where the evidence was more prejudicial than probative, [Petitioner] was deprived of a fair trial.

IV.    Where the trial prosecutor improperly attacked the credibility of [Petitioner's] wife by repeatedly stating his personal opinion during voir dire and opening statement that she will lie during the trial; improperly told the jury that he and the police officers were wondering where the currency and the heroin came from; improperly cross-examined [Petitioner] as to the credibility of the police officers who testified; and concluded by telling the jurors they should convict [Petitioner] in order to rescue Mrs. Davidson from an abusive relationship; prosecutorial misconduct deprived [Petitioner] of due process and of a fair trial, even absent any objection.

V.    [Petitioner] was deprived of the effective assistance of counsel when trial counsel failed to seek an adjournment of the trial until the transcript of the evidentiary hearing was available, failed to request the jury instruction on similar acts evidence, and failed to object to improper prosecution statements and arguments.

VI.    Even if no single assignment of error is sufficient for reversal, the totality of

4

trial errors denied [Petitioner] a fair trial.

The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Davidson*, No. 263013 (Mich. Ct. App. Sept. 26, 2006).  Petitioner filed a motion for reconsideration, which was denied.  *People v. Davidson*, No. 263013 (Mich. Ct. App. Dec. 4, 2006).

Petitioner filed a *pro per* application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  *People v. Davidson*, 478 Mich. 869 (Mich. 2007).

Petitioner then filed the pending petition for a writ of habeas corpus.  He raises the same claims raised in state court.

### III.  Standard of Review

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the great writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) & (2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable."  *Wiggins*, 539 U.S. at 520-21 (*quoting Williams v.*

5

*Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must

presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In

a proceeding instituted by an application for a writ of habeas corpus by a person in

custody pursuant to the judgment of a State court, a determination of a factual issue made

by a State court shall be presumed to be correct.").

The Supreme Court has explained the proper application of the "contrary to"

clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's]
> clearly established precedent if the state court applies a rule that contradicts
> the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly
> established precedent if the state court confronts a set of facts that are
> materially indistinguishable from a decision of this Court and nevertheless
> arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court held that a federal court should analyze a claim for habeas

corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a

state-court decision unreasonably applies the law of this Court to the facts of a prisoner's

case." *Id*. at 409.  The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry
> should ask whether the state court's application of clearly established
> federal law was objectively unreasonable. . . .
>
> [A]n unreasonable application of federal law is different from an incorrect
> application of federal law. . . .  Under § 2254(d)(1)'s "unreasonable
> application" clause, then, a federal habeas court may not issue the writ
> simply because that court concludes in its independent judgment that the

6

relevant state-court decision applied clearly established federal law
erroneously or incorrectly.  Rather, that application must also be
unreasonable.

*Id.* at 409, 410-11; *see also Knowles v. Mirzayance*, __ U.S. __, __, 129 S. Ct. 1411, 1419

(2009) (noting that the Supreme "Court has held on numerous occasions that it is not "an

unreasonable application of clearly established Federal law" " for a state court to decline

to apply a specific legal rule that has not been squarely established by this Court")

(*quoting Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Murphy v.*

*Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th

Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433

F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir.2003) (en

banc).

## IV.  Analysis

### A.  Fourth Amendment Claim

Petitioner argues habeas relief is warranted because the large sum of money and

heroin found in his dresser drawer should have been suppressed when they were the

product of an illegal, warrantless search.

The Supreme Court has held that "where the State has provided an opportunity for

full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted

federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

search or seizure was introduced at trial."  *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).

The Sixth Circuit Court of Appeals utilizes a two-step analysis to determine whether a

defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in

state court:

> First, the court must determine whether the state procedural mechanism, in
> the abstract, presents the opportunity to raise a fourth amendment claim.
> Second, the court must determine whether presentation of the claim was in
> fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted).

"Michigan has a procedural mechanism which presents an adequate opportunity

for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366

F. Supp. 2d 524, 527 (E.D. Mich.2005).  This procedural mechanism is a motion to

suppress, ordinarily filed before trial.  *See People v. Ferguson*, 376 Mich. 90, 135 N.W.2d

357, 358-59 (Mich.1965) (describing the availability of a pre-trial motion to suppress).

Because Michigan provides a procedural mechanism for raising a Fourth Amendment

claim, Petitioner may only demonstrate entitlement to relief if he establishes that

presentation of his claim was frustrated by a failure of that mechanism.  This he has not

done.

Petitioner raised the search and seizure issue prior to trial.  The trial court held an

evidentiary hearing and then denied the motion to suppress.  Petitioner raised this issue on

direct appeal.  The Michigan Court of Appeals addressed the issue at length and held that

the trial court's decision to admit the evidence was not in error.  The Michigan Supreme

court denied leave to appeal.

Petitioner was provided an opportunity for full and fair litigation of his Fourth

Amendment claim in the Michigan courts.  Petitioner's disagreement with the state

courts' conclusions on his Fourth Amendment claim does not render the state's

procedural mechanism inadequate.  Therefore, Petitioner's Fourth Amendment claim is

barred by the rule in *Stone v. Powell*.

## B.  Sufficiency of the Evidence

In his second claim, Petitioner argues that insufficient evidence was presented to

sustain his conviction for felonious assault.

"[T]he Due Process Clause protects the accused against conviction except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On direct review, review

of a sufficiency of the evidence challenge must focus on whether "after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.

Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  In the habeas context, "[t]he

*Jackson* standard must be applied 'with explicit reference to the substantive elements of

the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th

Cir. 2006), *quoting Jackson*, 443 U.S. at 324 n.16.  "Two layers of deference apply to

habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631

(6th Cir. 2010), *citing Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009). First, the

Court "must determine whether, viewing the trial testimony and exhibits in the light most

favorable to the prosecution, any rational trier of fact could have found the essential

9

elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, *citing Jackson,* 443 U.S. at 319. Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), *citing Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, __ U.S. __, 130 S. Ct. 665, 674 (2010), *quoting Jackson*, 443 U.S. at 326.

In this case, the Michigan Court of Appeals set forth the elements of felonious assault as follows: "'(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery.'" *Davidson*, slip op. at 4, *quoting People v. Avant*, 235 Mich. App. 499, 505; 597 N.W.2d 864 (1999). "An assault occurs when there is either an attempt to commit a battery or an unlawful act that places another in reasonable fear of an imminent battery." *Id.* Viewing the evidence in a light most favorable to the prosecution, the Michigan Court of Appeals held that sufficient evidence was presented to satisfy each of these elements beyond a reasonable doubt. The Michigan Court of Appeals relied on the following facts in

10

reaching this conclusion: after searching his home for missing cash, Petitioner confronted

Kathy, making her feel so threatened that she felt the need to call 911; Petitioner

repeatedly told police officers that he had only used a kitchen-type knife in the assault

and not a gun; and five kitchen-type knives were found lying on the kitchen counter.  The

state court concluded that "[b]ased on this evidence and the reasonable inferences that

could be drawn therefrom, a reasonable jury could conclude that defendant intended to

place Kathy in fear of a battery and that Kathy could have reasonably feared an imminent

battery while defendant possessed a knife." *Id.*  The state court rejected Petitioner's claim

that his statements that he used a knife in the assault were insufficient to prove the

elements of felonious assault because Kathy testified at trial that she did not see him with

a knife.  The trial court held that it was for the jury to decide whether to credit Kathy's

statement that Petitioner did not have a knife or Petitioner's statement that he had a knife.

*Id.*

      Although it did not cite the *Jackson* standard, the Michigan Court of Appeals

clearly applied this standard.  This Court cannot say that the state court's conclusion that

the evidence presented was sufficient was contrary to or constituted an unreasonable

application of federal law.

      Furthermore, Petitioner argues that the state court violated the *corpus delicti* rule

when it admitted his inculpatory statements absent proof of the *corpus delecti* of the

charged offense.   "[F]ederal habeas corpus relief does not lie for errors of state law."

*Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  A state's "'rule of independent evidence, or

corpus delecti, 'has no independent constitutional footing.'" *Phillips v. Lafler*, No. 06-15192, 2009 WL 1508343, *4 (E.D. Mich. May 28, 2009), *quoting Gribble v. Johnson*, 8 F. Supp. 2d 942, 955 (S.D. Tex.1998). Thus, the conclusion that sufficient evidence was presented to sustain the conviction is dispositive of this issue regardless of the alleged violation of the *corpus delecti* rule. *Id.*

### C. Admission of Evidence of Prior Narcotics Convictions

Next, Petitioner argues that the trial court denied him a fair trial by admitting evidence of his five prior drug convictions under Michigan Rule of Evidence 404(b).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir.2007). Additionally, the Supreme Court has declined to hold that the admission of similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990). Although the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513.

12

Finally, evaluations of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. *See Dell v. Straub*, 194 F. Supp. 2d 629, 645 (E.D. Mich.2002). Petitioner is therefore not entitled to habeas relief on this claim.

### D.  Alleged Prosecutorial Misconduct

Petitioner next argues that his right to a fair trial was violated by the prosecutor's misconduct.  Specifically, Petitioner claims that the prosecutor committed misconduct by: giving his personal opinion to the jury that Mrs. Davidson would lie at trial to protect Petitioner, personally vouching for the case and placing the prestige of his office behind the case, encouraging the jury to convict Petitioner to rescue Mrs. Davidson, and asking Petitioner to comment on the credibility of police officer Patrick Connor.

Respondent argues that three of Petitioner's four prosecutorial misconduct claims are procedurally defaulted.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of these claims.

13

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)). The Court must first consider whether the prosecutor's conduct and remarks were improper, and, if so, consider the following four factors to determine " whether the impropriety was flagrant" and thus warrants habeas relief:

> (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Girts v. Yanai*, 501 F.3d 743, 758-59 (6th Cir. 2007) (internal quotations omitted).

First, Petitioner argues that the prosecutor improperly attacked the credibility of Mrs. Davidson by offering his opinion during *voir dire* and opening statement that she would lie during trial to protect Petitioner. The Michigan Court of Appeals held that the prosecutor's statements were proper because he was "commenting on whether the jury should credit Kathy's proposed testimony in light of her continued relationship with defendant. A prosecutor may argue from the facts that witness is not worthy of belief."

14

*Davidson*, slip op. at 6.  While a prosecutor may not vouch for (or, for that matter) attack the credibility of a witness based upon his personal beliefs or other evidence known to the prosecutor, but not presented at trial, the prosecutor may make reasonable arguments as to witness credibility on the basis of the evidence.  *Green v. Mitchell*, 264 F.3d 663, 683 (6th Cir. 2001).  In this case, the prosecutor argued, that Mrs. Davidson's personal domestic situation could explain the inconsistencies between her trial testimony and her actions on the date of the assault.  The prosecutor simply asked the jury to consider Mrs. Davidson's motives for testifying when considering and evaluating her trial testimony. The Court finds that the state court's conclusion that this argument was not improper is not contrary to or an unreasonable application of Supreme Court precedent.

Second, Petitioner argues that the prosecutor engaged in misconduct during *voir dire* by improperly vouching for the case and by placing the prestige of his office behind the case.  The prosecutor explained to the jury that, in a case of an assault, the case may proceed even if the victim does not want it to.  He asked whether any jurors would have a difficult time evaluating a case where the alleged victim clearly did not want to proceed with the criminal prosecution.  He also informed jurors that the testimony in the case might raise more questions than it would answer, such as the origins of a large sum of cash found in the home.  He explained to jurors that the prosecution was not required to explain every aspect of the testimony, only to prove the elements of the charged crimes beyond a reasonable doubt.  The Michigan Court of Appeals held that the prosecutor's comments during *voir dire* were proper and simply explained to the jury the theory of the

15

prosecution's case without placing the prestige of the office behind the case. *Davidson*, slip op. at 6. "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted). In this case, the prosecutor stated to the jury what the law was, *i.e.* a defendant may be found guilty even if an assault victim does not want charges to be pressed, and the prosecutor need not prove anything beyond the elements of the charged crime, and did not improperly vouch for his case. The Court, therefore, finds that the state court's conclusion was not contrary to or an unreasonable application of Supreme Court precedent.

Third, Petitioner argues that the prosecutor improperly invited the jury to convict Petitioner out of sympathy for Mrs. Davidson because Petitioner's conviction would serve as a means of rescuing her from an abusive relationship. The prosecutor told the jury that, if they did not believe the police officers' testimony, then they should return a not guilty verdict, but, he added, he knew the jury would not do that "[b]ecause then you are just continually allowing Cathy [sic] Davidson to be another victim in that abusive situation." Tr., 2/2/05 at 148.

Prosecutors must obey "the cardinal rule that a prosecutor cannot make statements 'calculated to incite the passions and prejudices of the jurors.'" *Gall v. Parker*, 231 F.3d 265, 315 (6th Cir. 2000) (*quoting United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991)). The Michigan Court of Appeals held that the comment did not constitute

16

prosecutorial misconduct because the comment was brief and isolated and, viewed in the context of the entire closing argument, was not so inflammatory as to deny Petitioner a fair trial. The Court agrees with the state court's assessment. The remark, considered in context, was in keeping with the prosecutor's argument that Mrs. Davidson's trial testimony conflicted with her actions on the day of the assault because she feared Petitioner and wished to smooth things over in their relationship. Moreover, as the state court reasoned, the argument was isolated, likely did not mislead the jury, and the evidence against Petitioner was relatively strong. Therefore, the Court finds that the trial court's decision was not contrary to or an unreasonable application fo Supreme Court precedent.

Finally, Petitioner argues that the prosecutor committed misconduct because he asked Petitioner to comment on the credibility of a key prosecution witness, police officer Patrick Connor. The Michigan Court of Appeals held that the prosecution's examination of Petitioner regarding Connor's veracity was improper. The state court also held, however, that the questions were responsive to Petitioner's preceding testimony denying knowledge of the items in the police car. The Court finds this conclusion was not contrary to or an unreasonable application of Supreme Court precedent. Moreover, Petitioner fails to show that he was denied his right to a fair trial by this series of questions.

### E. Alleged Ineffective Assistance of Counsel

Petitioner argues that habeas relief is warranted because his trial attorney was

17

ineffective.  According to Petitioner, counsel was ineffective in: failing to seek an
adjournment of the trial until the transcript of the evidentiary hearing was available,
failing to request the jury instruction on similar acts evidence, and failing to object to
improper prosecution statements and arguments.

To establish that he received ineffective assistance of counsel, a petitioner must
show, first, that counsel's performance was deficient and, second, that counsel's deficient
performance prejudiced the petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687
(1984).  A petitioner may show that counsel's performance was deficient by establishing
that counsel's performance was "outside the wide range of professionally competent
assistance."  *Id.* at 689.  This "requires a showing that counsel made errors so serious that
counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at
687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different.  A reasonable probability is a probability sufficient to
undermine confidence in the outcome."  *Id.* at 694.  A court's review of counsel's
performance must be "highly deferential."  *Id.* at 689.  Habeas relief may be granted only
if the state-court decision unreasonably applied the standard for evaluating
ineffective-assistance-of-counsel claims established by *Strickland*.  *Knowles v.*
*Mirzayance*, __ U.S. __, 129 S. Ct. 1411, 1419 (2009).  "The question is not whether a
federal court believes the state court's determination under the *Strickland* standard was

18

incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at __, 129 S. Ct. at 1420 (internal quotation omitted).

The Michigan Court of Appeals, although not specifically citing *Strickland*, clearly applied the standard articulated in *Strickland*. First, Petitioner argues that counsel was ineffective in failing to seek an adjournment until the transcript of the evidentiary hearing regarding Petitioner's motion to suppress was available. He claims that counsel was unable to prepare adequately for trial without the transcript or to cross-examine witnesses adequately at trial.

The Michigan Court of Appeals held that counsel was not ineffective because Petitioner failed to show that he was prejudiced by the absence of the transcript. The court noted that the trial testimony of police officer Connor and Mrs. Davidson, the two witnesses who testified at the suppression hearing, was not markedly different from their testimony at the hearing. *Davidson*, slip op. at 7.

Petitioner relies on *Britt v. North Carolina*, 404 U.S. 226 (1971), in arguing that the Michigan Court of Appeals' opinion was an unreasonable application of Supreme Court precedent. In *Britt*, the Supreme Court held that an indigent defendant is entitled to a copy of transcripts of a prior court proceeding when the transcripts are needed for effective defense or appeal. *See also United States v. Young*, 472 F.2d 628 (6th Cir. 1972). In this case, Petitioner concedes that neither the defense nor the prosecution had the transcript at the time of trial. The trial court did not simply deny Petitioner the transcript; the transcript was not available to either side. Thus, the pending case is

19

distinguishable from *Britt*.  Petitioner has not shown any particular area of cross-examination or preparation that would have been available to defense counsel had he had the transcript prior to trial.  Thus, Petitioner has not shown that the state court's decision was contrary to or an unreasonable application of *Strickland*.

Next, Petitioner argues that counsel was ineffective in failing to request a jury instruction on similar acts evidence.  The Michigan Court of Appeals denied relief on this claim finding that Petitioner had not overcome the presumption that counsel's conduct was sound trial strategy.  *See Davidson*, slip op at 7.  This decision is neither contrary to nor an unreasonable application of *Strickland*.  Counsel may have reasonably determined that such instructions would only serve to highlight Petitioner's other improper acts and to remind the jurors of his highly incriminating statement, which would prove more detrimental than beneficial to the defense.  Petitioner has not shown that trial counsel erred or that he was prejudiced by counsel's conduct.  Habeas relief, therefore, is not warranted on this claim.

Finally, Petitioner argues that counsel was ineffective in object to several instances of prosecutorial misconduct.  The Michigan Court of Appeals held that most of the prosecutor's conduct criticized by Petitioner was proper and counsel was not ineffective for failing to object make futile objections to proper conduct.  The court of appeals further held that the prosecutor's question to Petitioner asking him to comment on a police officer's credibility, while improper, was not so serious that counsel's failure to object created a reasonably probability that, had the error not occurred, the result of the trial

20

would have been different.  *Davidson*, slip op. at 7-8.  The questions in this regard were isolated and relatively brief, and the trial Court clearly instructed the jurors that it was their decision alone to assess the credibility of each witness.  Jurors are presumed to follow their instructions.  *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).  Thus, the Court finds that the state court's decision was not contrary to or an unreasonable application of *Strickland*.

## F.  Cumulative Effect of Alleged Errors

Petitioner argues that the cumulative nature of the alleged errors denied him his right to due process and a fair trial.  This claim has no merit because "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."  *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002), *opinion corrected on denial of reh'g*, 307 F.3d 459 (2002), and *cert. denied*, 538 U.S. 947, 123 S. Ct. 1621, 155 L. Ed.2d 489 (2003).

## V.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should

2:08-cv-13464-GER-DAS   Doc # 9   Filed 01/21/11   Pg 22 of 22   Pg ID 986

have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the Court will deny a certificate of appealability.

### VI.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


s/Gerald E. Rosen_____
Chief Judge, United States District Court

Dated:  January 21, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 21, 2011, by electronic mail and upon Eugene Davidson, 5892 Hurlbut, Detroit, Michigan 48213 by ordinary mail.

s/Ruth A. Gunther_____
Case Manager

22